## Portius R. Wheeler, Appellee, v. Acme Harvesting Machine Company, Appellant.

### Gen. No. 5,512.

1. COMPROMISE AND SETTLEMENT—*evidence.* A decree enforcing a supposed agreement between a creditor and a creditors' committee of a corporation, to accept stock to par value of the claim, or fifty per cent. in cash, is not supported by the proof where such creditor did not accept the terms offered to the corporation's creditors by the creditors' committee, to turn over his claim and to accept cash or stock therefor, but proposed a reservation therein which was not accepted.

2. INFANTS—*creditor's suit.* On a creditor's suit to pursue assets of a debtor corporation into the hands of a transferee corporation, complainant is not entitled to any greater rights on the theory that he was a minor at the time of the creation of the debt, and that his guardians made the loan and were not authorized to consent to any settlement thereof, where the bill does not set up such facts or claim any relief on that ground, and the facts tend to show that the guardians are the real parties complainant, though the suit is in the ward's name.

3. CREDITOR'S SUITS—*when charges of fraud in transfer of corporation's assets not supported.* Charges in a creditor's bill that the assets of one corporation were transferred to another, to hinder, delay and defraud creditors, are not supported where it appears that the creditors, and not the officers, planned the transfer to pay debts, the transfer was solely for the equal benefit of all creditors, nothing was reserved for the stockholders or officers, the corpora-

tion was to receive nothing but the liquidation of its debts, and the creditors were to receive for their claims either stock of the new corporation to their full amount or fifty per cent. in cash at their election.

4.  CORPORATIONS—*what transaction not reorganization of.* Where the officers and stockholders of a corporation turn over its assets to a creditors' committee, in liquidation of its debts, and the committee with the consent of all the creditors, except one, turn over the assets to a new corporation, under an agreement whereby the creditors are to receive capital stock equal to the amount of their claims, or fifty per cent. in cash at their election, the transaction· is not the reorganization of the old corporation, but is the organization of an independent corporation which is not liable for the debts of the old, except as expressly provided for.

5.  CORPORATIONS—*when transfer of assets not constructively fraudulent.* A transaction whereby the officers and stockholders of a corporation transferred all of its assets to a creditor's committee, and such committee with the consent of all except one of the creditors transferred such assets to a new corporation, in return for capital stock or a certain per cent. of each creditor's claim in cash, is not constructively fraudulent, because the book value of the corporation's assets exceeded its liabilities, where it is evident that the real value thereof was much less.

6.  CORPORATIONS—*creditor's suit.* Where a creditors' agreement, to transfer the assets of a debtor corporation to a new corporation and take the stock thereof in settlement of their claims, has been carried out except as to one creditor who refuses to agree, and the stock to which he is entitled under the agreement has been issued in his name and delivered to a trustee to be transferred to the creditor when it is received in full payment, the stock so held is the property of the debtor corporation, and a creditor's suit is properly brought by the assignee of a judgment obtained by the nonconsenting creditor to subject it to execution thereon.

7.  COSTS—*who liable therefor.* On creditors' bill against a corporation, against which judgment was recovered, and a corporation to which its assets were transferred, and against officers and stockholders, only the corporation against which the judgment was recovered should be held liable for costs, where the transaction was not fraudulent, and the new corporation has no assets belonging to the old corporation, but where stock of the new corporation in the hands of a trustee belongs to the old corporation and is subjected.

8.  APPEALS AND ERRORS—*Appellate Court Rule 16 construed.* Appellate Court Rule 16 requiring the index to an abstract to describe each document by its character, parties, date, etc., is violated where the index gives only the number of each exhibit and its page in the abstract.

Wheeler v. Acme Harvesting Machine Co., 175 Ill. App. 69.

Creditors' suit. Appeal from the Circuit Court of Peoria county; the Hon. N. E. Worthington, Judge, presiding. Heard in this court at the April term, 1911. Reversed and remanded with directions. Opinion filed October 15, 1912. *Certiorari* denied by Supreme Court (making opinion final).

Page, Wead, Hunter & Scully and Newman, Northup, Levinson & Becker, for appellant; Salmon O. Levinson and Chester E. Cleveland, of counsel.

Winslow Evans, Dan R. Sheen and Frank T. Miller, for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

The Acme Harvester Company, hereinafter called the Illinois Company, was an Illinois corporation engaged in manufacturing harvesters and harvesting implements in Peoria County. In 1903 it became financially embarrassed, having assets of great book value and a large indebtedness. Conferences were held between its officers and its stockholders and its creditors. An arrangement was made by which a creditors' committee was appointed with authority to take charge of the business when that arrangement was assented to by a certain large majority of the creditors. More than the requisite number of creditors signed the agreement almost immediately. C. R. and M. C. W. Wheeler held a note against the Illinois company for $3,000 dated December 1, 1902, with interest unpaid thereon at six per cent. per annum from May 30, 1903. Printed copies of the agreement were sent to each of the creditors to sign, and the one sent to the Wheelers was signed by them with a reservation written therein by them. The agreement required the stockholders to deposit their capital stock with the committee and to give the committee a power of attorney to vote thereon, which should be irrevocable till the debts of the signing creditors were paid in full, and the signing creditors therein agreed to deposit with the committee all their

notes and claims assigned in blank and not to sue thereon while the agreement remained in force. The committee took charge of the business, and was permitted to conduct the business notwithstanding a pending bankruptcy proceeding against the Illinois Company. In 1905 the committee proposed that a new corporation be organized to take the assets and conduct the business, and that the creditors take stock in such new corporation in settlement of their claims against the Illinois Company at their par value or fifty cents on the dollar in cash. In the proposition the creditors' committee called this a re-organization of the Acme Harvester Company. This proposition seems to have been accepted by every creditor except the Wheelers, and they accepted it with a reservation. Thereupon the Acme Harvesting Machine Company of New Jersey, hereinafter called the New Jersey Company, was organized and the Illinois company transferred all the assets of the Illinois company to the New Jersey Company. The stock of the latter was subscribed by the creditors of the Illinois company, and was paid for by a surrender of their demands against the Illinois company at one hundred cents on the dollar. Thirty shares of the capital stock of the New Jersey Company of the par value of $3,000 was tendered to the Wheelers in payment of their claim against the Illinois Company, but they refused to accept it, except with the same reservation. Thereafter a certificate for said shares of stock was placed in the hands of George T. Page, an officer of the Illinois company, for the purpose hereinafter stated. C. R. Wheeler was the uncle and M. C. W. Wheeler was the half brother of Portius R. Wheeler and they had been his guardians when he was a minor, and it was the money of Portius R. Wheeler which his guardians had loaned to the Illinois Company without disclosing, so far as appears, that it was held by them as guardian, which loan was evidenced by said $3,000 note of the Illinois Compay. Portius R. Wheeler came of age and his guardians at some later date as-

signed this note to him, and he brought suit thereon against the Illinois Company and had a judgment on November 27, 1907, for $3,770.40 and costs and had an execution issued thereon, which was returned ''No property found,'' and had an alias execution issued, which was in the hands of the sheriff when this suit was begun.   Thereupon Portius R. Wheeler filed this bill against the Illinois Company, the New Jersey Company, various officers of said Illinois Company, the creditors' committee and others.   The general object of the bill was to have the transfer of the assets of the Illinois Company to the New Jersey Company declared fraudulent and to have the assets of the latter subjected to the payment of this debt, and for other relief. The cause was referred to a master who reported the proofs and his conclusions.   On exceptions to said report the decision was in favor of the defendants, except that by its decree the court found that at the time of the transfer of said assets it was agreed between the two companies and the Wheelers that they should either accept fifty per cent. in cash or the par value of said claim in stock, and that this agreement was binding on Portius R. Wheeler, and that there was no limit of time when the Wheelers were required to exercise said option; and the decree gave Portius R. Wheeler an unlimited time within which to exercise said option, and decreed that when he did elect, the New Jersey Company should pay him $1,500 or deliver to him thirty shares of its capital stock, as he should elect, and that he should have an equitable lien upon the assets of the New Jersey Company to secure the performance by it whenever he made his election.   The New Jersey Company appeals from that decree and urges that the bill should have been dismissed for want of equity, and Portius R. Wheeler assigns cross errors, wherein he claims that the sale of the assets should have been found fraudulent and the New Jersey corporation should have been required to pay him.

Both sides claim that there was an agreement be-

tween the Wheelers and the two companies, but they disagree as to what that agreement was. Appellant contends that the Wheelers agreed to accept either thirty shares of stock or fifty per cent. in cash of the par value of the face of the claim in satisfaction thereof. Portius R. Wheeler claims that he was to have that option and also retain the possession of the note and his right of action against the persons whose names were written on the back thereof. Upon a consideration of all the writings we are of opinion that there never was an agreement between the committee and the Wheelers. The proposition made to the creditors in print required them to surrender their notes. In signing the copy sent to them, the Wheelers added a proviso, written in by them, reserving possession of the note and their right of action against the endorsers. They were thereafter written to and urged to accept the proposition offered them, and they wrote letters professing to accept, but in each case writing in the limitation that they reserved their right of action against the endorsers. The committee never accepted their reservation and the Wheelers never accepted the proposition as it was made to them. The fact is that the endorsers were also endorsers on most of the paper of the Illinois Company and were the owners of most of the capital stock of the Illinois Company, and in practically sacrificing everything they had invested they insisted that they be released from those personal debts, and such was the meaning and effect of the written proposition submitted by the creditors' committee. It makes no difference here whether this requirement of the proposition was fair or unfair. It never was accepted by the Wheelers, though accepted by every other creditor. The Wheelers could not be compelled to accept the terms offered, but as they did not accept the terms offered and as the committee never assented to the reservation proposed by the Wheelers, the minds of the parties never met and there was no contract. Therefore, so far as the decree

was in favor of Portius R. Wheeler, and enforced a supposed agreement to permit him to exercise an option to accept $1,500 or thirty shares of the capital stock of the New Jersey Company, it is not supported by the proof and is erroneous.

In the assignments of error it is insisted that the money for which this note was given by the Illinois Company to C. R. and M. C. W. Wheeler was the money of Portius R. Wheeler, a minor, and that C. R. and M. C. W. Wheeler were his guardians and had no power to act at all upon the proposition submitted by the creditors' committee; and it seems to be claimed that some advantage accrues to Portius R. Wheeler because of these facts. We find no such advantage accruing to Portius R. Wheeler upon this record. His bill of complaint, as abstracted, does not set up his minority, the guardianship and that the guardians acted without authority, nor does it claim any advantage or relief on account thereof. The bill does not charge nor does the proof show that the defendant had notice or knowledge of said minority or guardianship or that this debt equitably belonged to a minor. During the proceedings here assailed the note was held by C. R. and M. C. W. Wheeler in their own names. Portius R. Wheeler became of age on July 23, 1903. The creditors agreement was signed by C. R. and M. C. W. Wheeler after October 19, 1903, and they then set out this claim as owned by them. In the fall of 1904, more than a year and a quarter after their ward became of age, they obtained a judgment upon this note in their own names against one of the endorsers or guarantors of the note. That was before they turned the note over to their ward. On March 24, and on April 5, 1905, they wrote letters to the creditors' committee, in which they discussed the note in question as owned by them. This was more than a year and eight months after their authority as guardians had ceased by their ward attaining his majority. M. C. W. Wheeler testified that he thought they assigned the note to

Portius R. Wheeler in the latter part of 1904, after they obtained the judgment against one of the endorsers, or else in January, 1905, but that C. R. and M. C. W. Wheeler still represented the indebtedness, at the time the proofs were taken in this case, and that Portius R. Wheeler knew nothing about the matter except what they told him. He was not a witness. There is other proof strongly tending to show that C. R. and M. C. W. Wheeler are the real parties complainant here, though in the name of Portius R. Wheeler.

This was a creditor's bill. It charged that the transfer of the assets from the Illinois Company to the New Jersey Company was colorable only, and was made to hinder, delay and defraud the creditors of the Illinois Company, including Portius R. Wheeler. These allegations are not sustained by the proofs. It was the creditors of the Illinois Company who planned this transfer, and not the officers of the Illinois Company. The transfer was made solely for the equal benefit of every creditor. It was made to pay the debts of the Illinois Company. Nothing was reserved for the benefit of the stockholders or officers of the Illinois Company. They parted with all the corporate property and put it in the hands of the creditors of the Illinois Company wherewith to pay their demands.

By the subsequent agreement the debts which the creditors' committee had created while operating the business were to be paid in full, and the debts which existed at the time when the creditors' committee took control of the property were to be paid either in capital stock in the New Jersey Company at one hundred per cent. or in cash at fifty per cent. at the election of each creditor. Out of an indebtedness of some $2,000,000 every creditor accepted this offer except Portius R. Wheeler. The Illinois Company has received nothing but the liquidation of its debts. This was not a reorganization of the Acme Harvester Company, but it was the organization of a new and totally independent corporation, and it is not liable for the debts of the old

company except so far as it expressly agreed to pay them. Bruffett v. Great Western R. R. Co., 25 Ill. 353 (2nd Ed., p. 310); Morgan County v. Thomas, 76 Ill. 120; Beardstown Pearl Button Co. v. Oswald, 130 Ill. App. 290. It is obvious that this transaction is not fraudulent in fact. We conclude it cannot be held to be constructively fraudulent. Kingman v. Mowry, 182 Ill. 256. The book value of the assets largely exceeded the debts, but it is evident that their real value was much less than the debts.

The bill and an amendment thereto, set up the matter of the thirty shares of stock of the New Jersey Company in the hands of Page, and alleged that Page refused to turn said stock over to the sheriff upon demand by the sheriff under said execution upon the said judgment in favor of appellant, except in full settlement of appellant's demand and the bills sought to compel Page to deliver said shares to the sheriff for levy under said execution by a decree holding Page personally liable to appellant in the sum of $3,000 unless he delivered said stock to the sheriff under said execution. The prayer of the bill among other things, was that each defendant disclose whether he or it held any property or capital stock of the New Jersey company, in trust or otherwise, and whether any defendant had put out of his or its hands any property of any kind, and also whether there had been transferred or delivered to any defendant "by the principal defendants" (meaning, apparently, by the Illinois Company and the New Jersey Company) any property or capital stock, etc., in which said principal defendants might claim any trust or equity, and that any property so discovered might be applied to satisfy the amount due on appellant's judgment; that the real interests of the parties in the property or estate of the principal defendants might be ascertained and determined, etc., and the bill prayed for such other relief as may be equitable. The answer of all the defendants stated that the Illinois Company caused the New Jersey Com-

pany to deliver to Page a certificate for thirty shares of the capital stock of the New Jersey Company, of the par value of $3,000 in the names of C. R. and M. C. W. Wheeler, at a time when they owned this claim, and authorized Page to deliver such certificate to C. R. and M. C. W. Wheeler in full payment and satisfaction of their claim against the Illinois Company; and that Page had frequently tendered said certificate to the Wheelers, and that Page now holds said stock for the purpose for which it was delivered to him. It is clear that these thirty shares of stock are part of the consideration which the New Jersey Company agreed to pay for the assets of the Illinois Company, and that it agreed with the Illinois Company to deliver this stock to the Wheelers as creditors of the Illinois Company, if they would accept it in full. The Wheelers, and appellant the assignee of the claim, refuse to receive it in full satisfaction of the debt. Who now owns this stock, after the Wheelers have refused to take it on the terms offered? We think it clear that these shares are the property of the Illinois Company. They are a part of what the New Jersey Company agreed to pay for the assets of the Illinois Company and if the creditors to whom this particular stock was set apart will not receive it, it belongs to the Illinois Company. It is said it is unfair to the other creditors of the Illinois Company to permit appellant to levy on this stock. But the other creditors have been paid that which they have accepted in full satisfaction of their claims, and the Illinois Company, according to the proofs, now has no creditors, except appellant; and said persons who were creditors are not parties to this suit, and are not asking any protection of the court. Of course, the capital stock of the Illinois company is in a certain sense a debt of that company, but that debt is subordinate to the lawful demands of all who are creditors of the Illinois company in the ordinary meaning of the word "creditor," and therefore is subordinate to the judgment recovered by Portius R. Wheeler

against the Illinois company, and to executions upon said judgment; and said stockholders are not parties to this suit; and we do not here use the term "creditor" in a sense which includes the holders of said capital stock. As these shares are the property of the Illinois Company, they are subject to levy by any creditor of the Illinois Company. But they cannot be reached by appellant with his execution without the aid of a court of equity, because the certificate is in the names of C. R. and M. C. W. Wheeler, and is in the possession of Page, who manifestly cannot surrender it for sale under said execution, except upon compulsion. The New Jersey Company cannot withdraw this certificate and issue another to the Illinois Company, upon which the sheriff may levy, unless the Illinois Company asks it. Appellant must have the aid of a court of equity to reach these shares with his execution, and to relieve the New Jersey Company and Page of the trust which the Illinois Company has imposed upon these shares of stock. In the view we have taken none of the appellees, except the Acme Harvester Company of Illinois, should be held liable to costs here or in the court below, nor should the New Jersey Company be held liable therefor.

The proof shows that long after this bill was filed the Acme Harvesting Machine Company of West Virginia was organized, and assets of the New Jersey Company were conveyed to it under the same agreement, but the West Virginia Company is not a party to this suit, and the pleadings raise no question concerning it, though some of the witnesses seem to have confused some of its affairs with those of the New Jersey Company.

The index to the abstract gives only the number of each exhibit and its page in the abstract. This violates our rule 16 (137 Ill. App. 626) which requires that the index shall also describe each document by its character, parties, date, etc., so as to distinguish it from every other document in the record. This defect

forces us to look at all the exhibits to find any particular document, and greatly decreases the value of the index to the court in a case largely depending upon documentary proof. We call attention to this defect in an effort to secure compliance with the rule.

The decree of the court below is reversed, at the costs of the Acme Harvester Company and Portius R. Wheeler, and the cause is remanded with directions to the court below to enter a decree directing such action by the Acme Harvester Company, the Acme Harvesting Machine Company and George T. Page as will subject said thirty shares of the capital stock of the Acme Harvesting Machine Company to levy and sale under the execution hereinbefore described in favor of Portius R. Wheeler against the Acme Harvesting Company, outstanding when the bill of complaint in this case was filed, and under any subsequent execution in said cause; and in all other respects dismissing the bill of complaint of Portius R. Wheeler for want of equity; and adjudging the costs of that court against the Acme Harvester Company and Portius R. Wheeler.

*Reversed and remanded with directions.*